```
```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

AMERICAN EAGLE OUTFITTERS, INC.,
a Delaware corporation; et ano.,

                Plaintiffs,

    - against -

GABRIEL MANUFACTURING CO., INC.,
d/b/a EZ APPAREL,
a New York corporation; et al.,

                Defendants.
------------------------------------x

05 Civ. 10520 (KMK)(DFE)

This is an ECF case

MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

    I am responding to a joint letter to me dated October 19, 2006 from Plaintiffs (collectively "AEO") and certain defendants, namely Gabriel Manufacturing Co., Inc. d/b/a EZ Apparel; EZ Apparel, LLC; Vintage Denim, LLC; Gabe Zeitouni, and Jack Listanowsky (collectively "EZ"). The letter contains 14 pages and Exhibits A through O. Pursuant to my normal practice, I plan not to docket the letter, but to keep it in my chambers file. I have discussed it with Judge Karas, who referred this case to me for general pretrial supervision on June 26, 2006.

    On June 1, 2006, Judge Karas held a conference with the attorneys; it was not recorded. At page 7 of the joint letter, EZ writes: "... Judge Karas directed Plaintiffs to conclude party discovery before the Court would revisit AEO's alleged need to obtain additional discovery from The Limited." However, Judge Karas tells me that his comments about AEO's proposed subpoena to The Limited Company were not so definitive and, if they had been, he would have put them in writing. Continuing at page 7, EZ writes:

> ... In exchange for a bar on subpoenaing The Limited (at least until other avenues of discovery are exhausted), EZ agreed to produce all documents in its possession concerning The Limited.

At page 4, AEO acknowledges that, on June 9, EZ produced 1,080 pages of documents evidencing EZ's manufacture and sale of The Limited goods, plus a one-page letter from The Limited's CFO to





"Our Factory Partners" that says: "Please accept this letter as our approval for PKT, Inc. and EZ Apparel to purchase fabric and components in addition to purchasing our excess fabric inventory." (Exh. D.)   AEO says: "A one page 'authorization' is not the type of distribution or manufacturing agreement that a sophisticated, multi-million dollar company such as The Limited would require ...."   At page 12, EZ responds:

> EZ is only one entity of many that perform services for a separate company, PKT, that holds the principal contract with The Limited. ... As a subcontractor to PKT, ... EZ is only provided with a basic authorization from The Limited ... . Importantly, a number of companies with no relation to EZ assist PKT as subcontractors in providing the variety of services PKT performs for The Limited. ... .
>
> If the Court has any questions about the relationship between EZ, PKT, and The Limited, [then] EZ will prevail upon PKT to provide a copy of its contract with The Limited to the Court *in camera*, and even ask a representative of PKT to explain the nature of its relationship with The Limited and EZ. In such a way, any questions that the Court may have can be answered in a manner that does not needlessly threaten to injure the economic interests of PKT, other nonparties, and EZ.

EZ seems to say that it does not have "possession" of any copy of the contract; EZ does not directly claim that no copy is within its "control," and indeed it says it can "prevail upon" PKT to provide a copy.  But EZ proposes to show the copy only to me and not to AEO.  EZ does not cite any caselaw, nor any authority, for its position that AEO should not be allowed to see a copy, or to hear PKT's interpretation, or to hear The Limited's interpretation, or to inform The Limited about this lawsuit.  I will assume that EZ means to invoke F.R.Civ.P. Rule 26(b)(2), and particularly "(iii) the burden or expense of the proposed discovery outweighs its likely benefit ...."   At page 10, EZ describes the harm as follows:

> ... AEO's subpoena will make it crystal clear that Plaintiffs are looking for proof as to counterfeiting on the part of EZ. ... AEO will exploit the issuance of the Seizure Order to prejudice The Limited against EZ. ...

-2-

> There are a number of firms that would be eager
> to step in [to replace EZ] should The Limited
> determine that using EZ raises excessive
> litigation concerns.

I think EZ's real worry is that The Limited will learn that the result of the *ex parte* Seizure Order was the seizure of 34,000 garments bearing AEO's trademarks, garments that AEO has examined and confirmed to be counterfeits. One issue is whether EZ knew that they were counterfeit. Another issue is raised by the insistence of EZ's owner Gabriel Zeitouni that he would never sell AEO-marked garments unless and until he had written authorization from AEO. He sought such approval from AEO in a May 26, 2005, e-mail, which said he had acquired some 98,000 AEO-marked garments: "now with product physically in my warehouse in Brooklyn, New York (over 50k pieces from 2 vendors, one import and one domestic) PLUS, 48,000 pieces already container loaded and in route to LA from Hong Kong." (Exh. G, item 5.) It is undisputed that he never received AEO's approval to sell. But he doesn't explain what he did with some 64,000 garments (98,000 minus the 34,000 that AEO seized).

In this context, AEO wishes to explore EZ's acquisition (also during 2005) of garments bearing The Limited's trademarks. Exh. D says: "The labels in the garments will be defaced or otherwise processed in accordance with the sell-off policy established by Limited Brands, Inc., the parent company of The Limited." But was that done? At page 12 of the joint letter, EZ asserts that "EZ does not sell any production for The Limited on the open market, but only to PKT." But does AEO have to accept that assertion without testing it? It is relevant, although not determinative, if The Limited or other companies possess evidence that EZ did not deal properly with trademarked garments.

The relevance is most obvious with respect to EZ's now-consolidated lawsuit against AEO's CEO James V. O'Donnell, which asserts that EZ was defamed by alleged statements "that Zeitouni was not an honest businessman, but in fact was involved with counterfeiting garments on a massive scale." (Exh. O, ¶30.) Hence, at page 13 of the joint letter, EZ writes: "**if** the Court were inclined to grant the application based upon the O[']Donnell action, we would instead agree to dismiss that litigation to remove the rationale for [a subpoena to] The Limited." I find that this would not remove the rationale; the proposed subpoena to The Limited (Exh. E) seeks evidence that is relevant to several issues in the trademark action: (a) whether Zeitouni knew that the 34,000 garments in "my warehouse" were counterfeit, (b) whether he sold any AEO-marked garments despite AEO's refusal

-3-

to grant him written authorization, and (c) whether he is a credible witness when he asserts that AEO gave oral assurances that modified its stern letters (Exh. A).

Furthermore, I find that the asserted harm from the proposed subpoena does not outweigh its likely benefit. Once it is served on The Limited, that nonparty will be able (using the joint-letter format required by my Standing Order) to object to producing documents and/or a Rule 30(b)(6) witness. I see no reason to delay service any further. I also see no reason to debate whether EZ has "control" over other documents relating to The Limited. I find that it is time to allow AEO to seek such documents directly from The Limited. Any information provided by The Limited may be designated by EZ or by The Limited as confidential pursuant to a standard confidentiality stipulation and order.

I grant leave to AEO to serve the proposed subpoena (Exh. E) on The Limited. At page 7 of the joint letter, EZ requests me to stay any such ruling pending an appeal to Judge Karas. I hereby grant a stay, which shall expire on October 30, 2006 at 10:00 a.m. unless by that time AZ has served and filed an appeal to Judge Karas from this Memorandum and Order.

_____
DOUGLAS F. EATON
United States Magistrate Judge

Dated:   New York, New York
         October 24, 2006

Copies of this Memorandum and Order will be sent by electronic filing to:

G. Roxanne Elings, Esq.
David J. Saenz, Esq.
Greenberg Traurig LLP
200 Park Avenue, 34th Floor
New York, NY 10166
(also by fax to 212-801-6400)

Peter B. Schalk, Esq.
Judd Burstein, Esq.
Judd Burstein, P.C.
1790 Broadway
New York, NY 10019
(also by fax to 212-974-2944)

Steven D. Isser, Esq.
Law Offices of Steven D. Isser
1359 Broadway, Suite 201
New York, NY 10018

David M. Schreir, Esq.
The Law Offices of David M. Schreir
274 Madison Avenue, 19th Floor
New York, NY 10016

Howard I. Elman, Esq.
Wachtel & Masyr, LLP
110 East 59th Street
New York, NY 10022

Hon. Kenneth M. Karas